**Vincente Serrano GARCIA, et al., Plaintiffs, Appellants,**

v.

**CECOS INTERNATIONAL, INC., et al., Defendants, Appellees.**

No. 84–1364.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1985.

Decided May 15, 1985.

Pedro J. Saade Llorens, Hato Rey, P.R., with whom Josefina Pantoja Oquendo, Armando Cardona Acaba, Bayamon, P.R., Luis Amauri Suarez Zayas, Hato Rey, P.R., Maria D. Olores Fernos, Jose E. Colon Santana, and Emmalind Garcia Garcia, Rio Piedras, P.R., were on brief for plaintiffs, appellants.

Leonardo Andrade Lugo, Hato Rey, P.R., with whom Goldman & Antonetti, Santurce, P.R., was on brief for Cecos International, Inc.

Jesus R. Rabell-Mendez, San Juan, P.R., with whom Marta Quinones, Hato Rey, P.R., Arturo Diaz, Rio Piedras, P.R., and Cancio, Nadal & Rivera, Hato Rey, P.R., were on brief for Municipality of Ponce.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

WISDOM, Senior Circuit Judge.

██ This case involves federal jurisdictional requirements for certain private citizens' suits in environmental litigation. We hold that the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C.

---

* Of the Fifth Circuit, sitting by designation.

§§ 6901–6987 (1982), requires a citizen to give the Administrator actual notice of intent to sue at least sixty days before the filing of the complaint if the citizen wishes to bring action under section 6972(a)–(b) of the statute. We further find that the comprehensive remedial devices in the RCRA foreclose a claim under 42 U.S.C. § 1983 (1982). Because all parties concede that there was no actual notice in accordance with section 6972, we vacate the judgment of the district court and remand the case to the district court with instructions to remand to the Superior Court of Puerto Rico.

## I. FACTS AND PROCEEDINGS BELOW

For decades the City of Ponce, Puerto Rico, operated a facility in the western part of the city for the disposal of solid wastes, some of which are now classified as hazardous. Those who deposited this waste never filed an Environmental Impact Statement, nor did the local Environmental Quality Board require them to do so. The plaintiffs, residents of the City of Ponce, allege that dumping at the site was confused, undocumented, and unregulated.

In the summer of 1982, EPA filed suit against Ponce for alleged violations of 40 C.F.R. § 265 (1982) (interim status standards for owners and operators of hazardous waste facilities). That fall, the government of Puerto Rico and the EPA executed a "Memorandum of Agreement" to establish policies, responsibilities, and procedures under *id.* § 123.126 for a waste management program. Meanwhile, Ponce had retained Cecos International, Inc., to manage the facility. Cecos submitted, in stages, its plans to bring the facility into full compliance with federal law. (This process was ninety percent complete at the time of the citizens' suit.) EPA's civil action was settled by a Consent Order in May 1983.

In December 1983, a group of citizens of Ponce filed a civil action in the Superior Court of Puerto Rico against Cecos and Ponce and its mayor seeking injunctive relief against the construction and imminent operation of a waste disposal facility at the site "until all applicable laws and regulations were complied with". In January 1984, the defendants successfully petitioned for removal to federal district court, alleging deprivations of their civil rights under 42 U.S.C. § 1983 (1982). After removal, the plaintiffs amended their complaint to add alleged violations of RCRA, *id.* §§ 6901–6987. The plaintiffs appealed from the district court's denial of the injunction. On appeal, we find on our own motion that there is no federal jurisdiction and accordingly dismiss the appeal for want of jurisdiction.

## II. DISCUSSION

### A. Alleged Jurisdiction Under the Resource Conservation and Recovery Act

█ After removal to district court, the plaintiffs amended their complaint to allege violations of RCRA. We find that there is no federal jurisdiction here because the plaintiffs failed to follow the procedures required for suits by private citizens under the statute. *See* 42 U.S.C. § 6972(b) (1982).

RCRA's notice provision provides in pertinent part:

"(b) Actions prohibited. No action may be commenced under paragraph (a)(1) of this section—

"(1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, standard, regulation, condition, requirement, or order;"

*Id.* The plain language of section 6972(b) commands sixty days' notice before the commencement of the suit. To accept anything less "constitutes, in effect, judicial amendment in abrogation of explicit, unconditional statutory language". *City of Highland Park v. Train*, N.D.Ill.1974, 374 F.Supp. 758, 766, *aff'd*, 7 Cir.1975, 519 F.2d 681, *cert. denied*, 1976, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337.

Cecos argues that we should take jurisdiction on the ground that the notice provision is not a "jurisdictional prerequisite". Cecos relies on *Roosevelt Campobello International Park Commission v. EPA*, 1 Cir.1983, 711 F.2d 431, where this Court stated with regard to the Federal Water Pollution Control Act (FWPCA):

"Without deciding the extent to which notice must be given for *jurisdictional purposes* as a prerequisite to the *maintenance* of a citizen suit under section 1365, we note that courts have taken a generally functional approach to notice, holding the requirement satisfied despite technical deficiencies where the agency had time to investigate and act on the matter in issue, free of judicial compulsion."

*Id.* at 434 n. 7 (emphasis in original).

Cecos urges us to adopt a similar, "functional" approach concerning the commencement of an action under RCRA. We decline to do so, noting that our dictum in *Roosevelt Campobello* was ill-advised and against our holding in *Commonwealth of Massachusetts v. United States Veterans Administration*, 1 Cir.1976, 541 F.2d 119, where we upheld strict application of the notice requirement. Moreover, *Roosevelt Campobello* concerned the plaintiffs' application for attorney's fees, not an adjudication of environmental issues. There was no contention that jurisdiction was improper in the original action. *Id.* at 432-33. The question before the Court was whether FWPCA's attorneys' fees provision, 33 U.S.C. 1365(d) (1982), which on its face applied only to the Act's citizen suit provision, *id.* § 1365(a), would also apply to a suit brought under *id.* § 1369, which governs petitions for judicial review of the EPA's actions. *Campobello*, 711 F.2d at 433. In the instant case, by contrast, we are attempting not to fill statutory interstices regarding the award of attorney's fees but to construe statutory prerequisites for the maintenance of the initial action.

In *Commonwealth of Massachusetts v. United States Veterans Administration*, 1 Cir.1976, 541 F.2d 119, we squarely faced the issue of whether the plaintiffs' failure to comply with the notice provision of FWPCA precluded reliance on the citizen suits provision as a jurisdictional basis for the suit. The plaintiff argued that since no amount of administrative action could cure the violation, the suit could be maintained with only forty days' notice. We rejected that argument, noting that administrative attention could still expedite matters, and that a citizen suit could do no more. *Id.* at 121.

The identical langauge of the notice provision in both *Veterans Administration* and the present case is unambiguous: "No action may be commenced" by private plaintiffs without sixty days' notice. 33 U.S.C. § 1365(b)(1) (1982) (FWPCA); 42 U.S.C. § 6972(b)(1) (1982) (RCRA). The notice requirement is not a technical wrinkle or superfluous formality that federal courts may waive at will. We believe that it is part of the jurisdictional conferral from Congress that cannot be altered by the courts.

We recognize that some other courts have applied a "pragmatic" approach to the sixty-day notice provision in environmental statutes. In *Pymatuning Water Shed Citizens v. Eaton*, 3 Cir.1981, 644 F.2d 995, the Third Circuit upheld an action under section 1365 of FWPCA despite the plaintiffs' failure to give sixty days' notice. It was enough that the district court stayed the proceedings after the filing of the complaint. The Court held: "[It is not the case] that failure to abide by the § 505(b) notice provision [33 U.S.C. § 1365 (1982)] is fatal to the suit and can be cured only by dismissal and refiling after proper notice. We agree with appellee that the notice provision is procedural and that failure to abide by its terms does not void the judgment of the district court." *Id.* at 996. Similarly, in *Natural Resources Defense Council, Inc. v. Callaway*, 2 Cir.1975, 524 F.2d 79, the Second Circuit waived strict compliance with the FWPCA's sixty-day notice requirement after the defendant asserted that it would take no action. *Id.* at 84 n. 4. *See also Natural Resources De-*

*fense Council, Inc. v. Train,* D.C.Cir.1974, 510 F.2d 692, 703 (notice provision of FWPCA held not jurisdictional prerequisite); *Conservation Society of Southern Vermont, Inc. v. Secretary of Transportation,* 2 Cir.1974, 508 F.2d 927, 938 (sixtyday notice provision does not erect absolute barrier to earlier suit by citizens); Annot., 68 A.L.R.Fed. 701 (1984).

Finally, in *Kitlutsisti v. Arco Alaska, Inc.,* D.Alaska 1984, 592 F.Supp. 832, the district court waived the FWPCA's sixtyday notice provision in ongoing litigation: "[Section] 1365(b) only addresses the *commencement* of an action without notice. It does not ban plaintiffs from introducing new legal arguments in *continuing* litigation based on changed underlying circumstances." *Id.* at 842 (emphasis in original). The court also waived the sixty-day notice requirement because it would purportedly have made little difference. "In this case, EPA and the dischargers have not even hinted that they would attempt to correct the legal deficiencies with the permit. Therefore, any difference in legal theory was of no practical interest to defendants except as an argument to delay this lawsuit." *Id.*

We decline to follow the direction of *Pymatuning* and instead hold that a citizen must wait sixty days after actual notice before commencing a suit under section 6972. The holding is mandated by First Circuit precedent, as discussed above, is consistent with the approach of the Supreme Court in *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 1981, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435, is bolstered by legislative history, and is supported by considerations of public policy.

In requiring strict compliance with the notice provision, this Court joins the Seventh Circuit. *See Veterans Administration,* 541 F.2d at 121. *City of Highland Park v. Train,* 7 Cir.1975, 519 F.2d 681, *cert. denied,* 1976, 424 U.S. 917, 96 S.Ct. 1141, 47 L.Ed.2d 337. There, the private plaintiffs brought a citizen suit under the Clean Air Act alleging that the EPA Ad-

ministrator had not promulgated certain air quality regulations for Illinois. Although they did not notify the EPA before commencing the suit, the plaintiffs argued that, since the government had sixty days to respond to the complaint under Fed.R. Civ.P. 12(a), the purpose of the notice requirement was satisfied. In language that is apposite here, the Court rejected that argument:

"Congress intended to provide for citizens' suits in a manner that would be least likely to clog already burdened federal courts and most likely to trigger governmental action which would alleviate any need for judicial relief.... Section 304(b)'s statutory command plainly states that '[n]o action *may be commenced* ... prior to 60 days after the plaintiff has given notice of such action to the Administrator.' (Emphasis supplied.) Plaintiffs made no attempt whatsoever to comply with the notice provision, and their suit therefore could not properly be commenced."

*Id.* at 690–91.

The Seventh Circuit affirmed its adherence to *Highland Park* in *City of Evansville v. Kentucky Liquid Recycling,* 7 Cir. 1979, 604 F.2d 1008. There the district court had dismissed the private plaintiffs' claims under FWPCA because they had failed to comply with the notice provisions of 33 U.S.C. § 1365 (1982). The Seventh Circuit declined to follow *Natural Resources Defense Council v. Callaway,* 2 Cir.1975, 524 F.2d 79, and *Natural Resources Defense Council v. Train,* D.C.Cir. 1974, 510 F.2d 692, 703:

"In each [decision], the court's focus was [not] on whether it had jurisdiction, since the Administrative Procedure Act provided for review of final agency actions. In none of these cases did the court consider the propriety of implying an independent right of action under the FWPCA."

*Kentucky Recycling,* 604 F.2d at 1013 (citations and footnotes omitted); *see also Reeger v. Mill Service, Inc.,* D.C.Pa.1984, 593 F.Supp. 360, holding plaintiffs' failure to comply with the notice provisions in envi-

ronmental litigation precluded jurisdiction; *Pinkney v. Ohio Environmental Protection Agency*, N.D.Ohio 1974, 375 F.Supp. 305.

The Supreme Court has demanded strict adherence to statutory provisions for citizens' suits in environmental litigation. In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 1981, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435, the Supreme Court held that statutory provisions conferring authority to sue upon private citizens in FWPCA, 33 U.S.C. §§ 1251–1376 (1982) and the Marine Protection, Research, and Sanctuaries Act of 1972, *id.* §§ 1401–1445, were to be narrowly construed:

> "[T]he structure of the Acts and their legislative history lead us to conclude that Congress intended that private remedies in addition to those expressly provided should not be implied. Where, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment."

453 U.S. at 18, 101 S.Ct. at 2625, 69 L.Ed.2d at 449–50.

In discussing the citizen-suit provisions in the two statutes, the Court said: "Plaintiffs invoking these provisions first must comply with specified procedures—which respondents here ignored—including in most cases 60 days' prior notice to potential defendants." *Id.* at 14, 101 S.Ct. at 2623, 69 L.Ed.2d at 447. In the light of the Supreme Court's strict interpretation of private rights of action in environmental litigation and its express mention of the notice provision, we cannot dismiss RCRA's identical requirement, 42 U.S.C. § 6972 (1982), as a formality or a procedural provision.

The scant legislative history of the forebear of these notice provisions, section 304 of the 1970 Clean Air Act Amendments, bolsters our holding of requiring actual notice sixty days before the filing of the complaint. Senator Muskie, the original sponsor of the citizen suit provision, remarked that the purpose of the notice pro-

visions was "to trigger the [EPA's] enforcement mechanism" and thereby avoid suit. 116 Cong.Rec. 33,103 (1970). Critics were concerned that citizen suits brought without notice to the EPA would hobble administrative enforcement. *Id.* Senators were also concerned about the potential increase in work for the courts, especially after Chief Justice Burger had publicly chastened Congress for overburdening the federal courts. *See id.* at 32,925 (remarks of Senator Hruska); *id.* at 33,102 (remarks of Senator Griffin). As a recent commentator summarized the rationale for notice prior to suit: The sixty days' notice was "a compromise between the need for private enforcement and a desire not to impose excessive burdens on the EPA or the federal courts". Note, *Notice by Citizen Plaintiffs in Environmental Litigation*, 79 Mich.L.Rev. 299, 306 (1980).

Judge Merritt has noted there are at least eight environmental statutes—beginning with the Clean Air Act of 1970—that condition a private plaintiff's right of action on the plaintiff's having given prior administrative notice of the alleged violations. *Ada-Cascade Watch Co. v. Cascade Resource Recovery*, 6 Cir.1983, 720 F.2d 897, 907 n. 3 (Merritt, J., dissenting). The language of many of these provisions is effectively identical. *Compare* 42 U.S.C. § 6972(b)(1)(A) (1982) (citizen suits under RCRA) *with* 33 U.S.C. § 1365(b)(1)(A) (1982) (citizen suits under FWPCA), *id.* § 1415(g)(2)(A) (citizen suits under Marine Protection, Research, and Sanctuaries Act of 1972), 42 U.S.C. § 4911(b)(1)(A) (1982) (citizen suits under Noise Control Act of 1972), *and id.* § 7604(b)(1)(A) (citizen suits under the Clean Air Act). As Judge Merritt argued, "The widespread occurrence of such a notice requirement demonstrates that the provision was intended to be taken seriously". *Id.* at 908.

There are also sound policy reasons for enforcing strict adherence to the notice requirement. Notice from potential private plaintiffs gives the EPA and the state an opportunity to investigate the alleged violation. "Lawsuits of this type frequently

involve problems arising from the promulgation, interpretation, and application of minimal environmental standards to promote a national policy." *Id.* One commentator has observed:

"[The Clean Air Act provision] encouraged citizen suits and ensured more comprehensive enforcement. But the notice provision ensured that EPA enforcement would remain primary. The required notice was intended to trigger agency enforcement, and to afford the EPA, state, and violator sixty days to resolve the problem without being harassed by a lawsuit. By guaranteeing time for cooperation and agency enforcement, notice also ensured that some citizen suits could be avoided, thereby lessening the burden of citizen suits shouldered by the courts. The notice requirement is therefore an integral part of Congress's compromise between public and private enforcement of the Clean Air Act."

Note, *Notice by Citizen Plaintiffs in Environmental Litigation,* ·79 Mich.L.Rev. 299, 307 (1980); *see* Steinberg, *Is the Citizen Suit a Substitute for Class Action in Environmental Litigation?,* 12 San Diego L.J. 107, 130–32, elaborating reasons for sixty-day notice requirement.

Moreover, the notice provision facilitates extrajudicial settlement of disputes. Judge Merritt has noted:

"By enacting the sixty-day notice provision, Congress intended to encourage resolution of disputes outside the courts, and to secure the participation of the EPA in certain suits. If a court merely stays an action for sixty days after it is filed, there is little incentive for the plaintiffs to seek alternative methods of resolving their disputes. Positions may have hardened, lawyers employed and legal fees paid. Furthermore, under the threat of an impending lawsuit, the Administrator and state may have less room for maneuver and compromise."

*Ada Cascade,* 720 F.2d at 908.

 Finally, even if a defendant has responded to the possibility of a citizen suit by stating it will do nothing to correct the alleged violation, we believe plaintiffs should still be required to observe the sixty-day notice provision. If the alleged violation involves a hazardous pollutant, the statute expressly waives the notice provisions. Permitting immediate suit ignores the possibility that a violator or agency may change its mind as the threat of suit becomes more imminent. After the complaint is filed the parties assume an adversary relationship that makes cooperation less likely. Because a mere adjustment of the trial date or the filing of a supplemental or amended complaint to cure defective notice cannot restore a sixty-day non-adversarial period to the parties, we would therefore dismiss suits where the complaint is filed less than sixty days after actual notice to the agency and the alleged violators.

The record discloses that the cause of action under RCRA was pleaded by an amended complaint filed after removal. Because of the plaintiffs' failure to grant any notice to EPA and the defendants of the lawsuit before the filing of this action, we have no jurisdiction.

## B. Jurisdiction Under Section 1983 Claims

 The plaintiffs alternatively contend that this Court has jurisdiction under claims they have alleged under section 1983. We find, however, that these claims have been foreclosed by the comprehensive regulation afforded by the RCRA, and we are accordingly without jurisdiction.

We have been unable to find any opinion predicating jurisdiction in a challenge to a hazardous waste site on section 1983, nor have counsel referred us to any. More importantly, we find that a section 1983 claim is here foreclosed by the more specific and more comprehensive provisions of RCRA. In *Sea Clammers,* the Supreme Court held: "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20, 101 S.Ct. at 2626, 69 L.Ed.2d at 450.

Although the Court was there concerned with the regulations of FWPCA, 33 U.S.C. §§ 1251–1376 (1982) and the Marine Protection, Research, and Sanctuaries Act, *id.* §§ 1401–1445, the statutory scheme of regulation under RCRA has a closely analogous "comprehensive enforcement scheme". RCRA has provisions for federal guidelines in state hazardous waste programs, 42 U.S.C. § 6926 (1982), for civil and criminal penalties for federal enforcement, *id.* § 6928, for integration with other environmental legislation, *id.* § 6905, and for federal-state and interstate cooperation, *id.* §§ 6094, 6926. As the statute iterates in its opening provision:

"[T]he problems of waste disposal as set forth above have become a matter national in scope and in concern and necessitate Federal action through financial and technical assistance and leadership in the development, demonstration, and application of new and improved methods and processes to reduce the amount of waste and unsalvageable materials and to provide for proper and economical solid waste disposal practices."

*Id.* § 6901(a)(4).

Cecos attempts to preserve section 1983 jurisdiction by arguing that *Sea Clammers* dispenses with only its allegations of federal statutory violations, not with the plaintiffs' claims based on "property rights as they pertain to their personal property, and as representatives of the property rights of the general public to enjoy Puerto Rico's natural resources pursuant to the Puerto Rico constitution". Counsel has not referred us to any case recognizing a federal constitutional right of this nature on which we can predicate federal jurisdiction, and our own research has failed to uncover any.

Because of RCRA's numerous and elaborate statutory provisions relating to enforcement, and because of their similarity to enforcement provisions in the Federal Water Pollution Control Act and the Marine Protection, Research and Sanctuaries Act, discussed in *Sea Clammers*, we find the RCRA statutory scheme is sufficiently comprehensive to preclude a cause of action under section 1983.

■ We also hold that the section 1983 cause of action is foreclosed under *Parratt v. Taylor*, 1981, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, where the Supreme Court held that the existence of sufficient state remedies satisfied any requirement of due process where a section 1983 action was being alleged. Here, the plaintiffs have adequate state remedies. They can sue for damages, 31 L.P.R.A. § 5141, seek an injunction, 32 L.P.R.A. §§ 3521–3522, and seek relief through Puerto Rico's Environmental Act, 12 L.P.R.A. § 1139.

### C. Abstention

It has been urged that this Court should decline to review the case at hand on the basis of abstention. *See Burford v. Sun Oil Co.*, 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed.2d 1424. Puerto Rico is said to have a comprehensive local program for management of waste disposal. Therefore, the exercise of federal judicial review here would be disruptive of state courts' efforts to adjudicate these claims. *See Ada Cascade Watch Co. v. Cascade Resource Recovery*, 6 Cir.1983, 720 F.2d 897, applying *Burford* abstention to a suit under RCRA. We decline to reach this question, however, since we are without subject matter jurisdiction.

### III. CONCLUSION

The failure to provide actual notice to the EPA, the state, and the alleged violator at least sixty days before the commencement of the action forecloses the possibility of jurisdiction under RCRA. The plaintiffs have no cause of action under section 1983 because the RCRA has precluded that approach. We find that the case was improvidently removed from the Superior Court of Puerto Rico. The judgment of the district court is VACATED and the case is REMANDED to the district court with instructions to remand to the Superior Court of Puerto Rico.